Thank you. May it please the court. My name is Eitan Castellanich. I am representing Stacy Parker in this appeal. Parker has been unable to work since November 2010 due to the combined functional effects of her many impairments including fibromyalgia, osteopenia with multiple fractures, fracture of the greater tuberosity in her left shoulder, and depression. In this case, the ALJ erred by failing to fully and fairly develop the record by obtaining a psychological evaluation of Parker. The record does not include any such evaluation, but there is evidence of clinical observations showing that she does have depression. As a result of this error, the ALJ then failed to properly evaluate the functional limitations that Parker experiences as a result of her depression. Counsel, I have a question about fibromyalgia. As I read it, there were some probable diagnoses, but there is, as I understand it, a social security regulation that I do not see in the record that that was done. I may be mistaken, and I would appreciate your comment on that. Well, the testing was done by her treating rheumatologist, Dr. Jensen. But were those all the required tests that are? Well, for purposes of this appeal, that's sort of a moot point now because the ALJ formally found that she has a severe impairment, medically determinable severe impairment of fibromyalgia. So if the ALJ had not found that, then we would have to look back and go, well, did Dr. Jensen say enough? Did he do enough testing, enough rule-outs? But he did do testing to rule out. He ruled out lupus, and he determined, he diagnosed her with fibromyalgia. The other thing, because we really are constrained to review the ALJ's decision here, we can't try to look back and go, well, but was that really a good enough diagnosis of fibromyalgia? No, the reason I'm asking is that you are claiming that Dr., or I think you are claiming that Dr. Thompson's testimony is inconsistent with clinical findings. And so I was looking at it from that point of view. Dr. Thompson did not appear to notice that Dr. Jensen was a rheumatologist and that he had actually diagnosed with fibromyalgia. The, once again, even for his purposes, um, he's not a rheumatologist. And so he didn't actually say that she doesn't have fibromyalgia, and he didn't say that any of her symptoms that she was describing were inconsistent with such a diagnosis. He simply avoided it. It's not really in his area of expertise to even make an opinion about that. So the other question, I'm sorry, I thought you were finished. The other question I had for you is this. The ALJ gave, discredited your client's testimony to some extent, in terms of her testimony about the extent of her limitations. And my question to you is this. If some of the reasons were not borne out by the record, as you argue, you argue that none of them are, but let, I want you to assume for the purpose of this question that some are supported and some are not. Do we, don't we have a precedent that requires us still to uphold the ALJ in that situation if some are supported and some are not? We have precedent that says that you can with uphold, affirm the ALJ's decision based on that fact scenario, but you're not by any means required to. The issue, the salient issue here, the issue that you'd have to be looking at is whether or not the errors negated the ALJ's overall analysis of the evidence. And I believe in this case it did because there is so much testimony by, I mean, I think that's the key evidence because we don't have medical opinion evidence in this case from any treating or examining sources. The essential evidence here on trying to figure out how impaired Ms. Parker was by her fibromyalgia, but not just by her fibromyalgia because these broken feet and broken feet and broken ankles that were just repetitive over and over again because of her osteopenia, that fed into it as well. But the overall, her description of how limited she actually is in her life is really rather compelling. And the lay evidence from her friend is equally compelling as far as describing just how dysfunctional she has become. And so it doesn't, it seems that even if somewhere in there the ALJ could identify a fact from a comment, and there are, there's a few comments in there that he points to. Well, she says she's exercising, but she was advised to exercise and then she described not being able to and having to use tramadol to do it. Well, let me just ask you something. Why does it matter that she was advised to exercise? The question in terms of capacity is whether she has the ability to do so, whether it's on her own hook or whether someone told her to do it. So what role does the advice play in your view? Well, it doesn't really. The exercise though that was, there's no description of her doing exercise that is inconsistent with her description of her limitations. And for example, and then the other one, for example, she was trying to garden. She's always gardened, had huge gardens. She thought she'd be able to, there's no evidence that she was actually able to. There's evidence of her saying that there was improvement. And then yes, she was doing better after one of her surgeries, but on some days her foot swelled so badly and it hurt so badly, she wanted to cut it off. That's the part that the ALJ didn't mention when he was mentioning, oh, look, she said she's doing better. If I may, I'd like to reserve any additional time if possible for a rebuttal, unless you have a question. We'll hear then from Mr. Nelson. Your Honor, Lars Nelson on behalf of the Commissioner of Social Security. This court should affirm because there is substantial evidence to support the ALJ's decision and the ALJ's decision is free from prejudicial legal error. Your Honor, in this case, there were two nevertheless, the ALJ gave the claimant the benefit of the doubt and restricted her to sedentary work. And still there were jobs that she could do. Her activities as recent as April of 2013, just two months before the date last insured, she was reported that she was a huge gardener and a caterer and her garden was the size of Rhode Island at 379. She told another treatment provider that same month, she does lots of gardening at 395. And then in June, the month of her date last insured, she described herself as very active with her hands and that she was a chef and that's at 380. Nevertheless, the ALJ gave her the benefit of the doubt and restricted her to sedentary work. Even giving her all of this benefit of the doubt, there were still in the national economy that she could perform. The substantial evidence standard is a deferential standard and it is a low standard. And here the evidence cited by the ALJ easily clears that low hurdle. I'd like to turn to the court's questions a bit about the fibromyalgia. Your Honor, in this case, Dr. Thompson did doubt the rheumatologist's diagnosis of fibromyalgia because the testifying doctor, Dr. Thompson, was familiar with the social security regulation. Fibromyalgia is a diagnosis by exclusion. And in this case, Dr. Jensen, who was her rheumatologist, only excluded lupus. And so Dr. Thompson did have a good faith basis to question the diagnosis. Dr. Jensen only saw the claimant on two occasions, in May 2013 and in June 2013. That is a very limited treatment. By contrast, she saw the claimant in this case, saw her treating an orthopedic surgeon nine times before the date last insured, and she had two surgeries with them. Thus, it's no surprise that the ALJ called an orthopedic specialist in this case because that was the primary issue. But even setting that aside, as counsel notes, that the ALJ gave her the benefit of the doubt and accepted fibromyalgia as a severe impairment. But the ALJ specifically found that her fibromyalgia was treated with her medication, and that is part and parcel with her activity. Two of the treatment notes that reference her treatment are both from Dr. Jensen, the treating rheumatologist, who said that she had moderate success with Ultram, or also known as Tramadol, and that she had fair control with Tramadol. And then in July 2013, just one month after the date last insured, the claimant told another doctor that Tramadol was helping with her chronic pain issues and it was improving her quality of life. And then in June 2013 treatment notes, at 380, that she is very active using her hands and that she is a chef. She was telling her orthopedic surgeon that she wanted to have surgery on her hands because she wanted to get back to using her hands and being active. I would like to briefly address the mental impairment. The Social Security Act requires that there be a medically determinable impairment. And in this case, there is no source who diagnosed a mental impairment in this case. And indeed, there are no mental findings during the relevant period before the date last insured that would support any mental impairment. The briefing by Mrs. Parker only cites two records to substantiate any mental impairment. One is at 408, between 408 and 411. And those happened in 2014 and were related to a condition that she was having with her stomach when she was having severe abdominal pain and sought emergency treatment. And the only other evidence cited is her own subjective reports at 345 to Dr. Jensen. And those are just her own subjective complaints. And Dr. Jensen didn't diagnose a mental impairment either. She testified at the hearing at 469 that every time she went to the doctor, she was advised to see a therapist. And yet this court can look at every single document in the medical record, and there's not one single note documenting that advice in this case, Your Honor. In the absence of any evidence suggesting that she had a mental impairment, it was not incumbent upon the ALJ to go on a fishing expedition for the claimant to submit her to a consultative examination and or to further develop the record in that regard. Because substantial evidence supports the ALJ's decision and clears the deferential substantial evidence standard of review in this case, Your Honor, it would be the commissioner's position that this court should affirm. And unless the court has any other questions, I will cede my time. It does not appear that we do have further questions. I don't see either of my colleagues raising their hands, so we'll hear rebuttal at this time. Um, let's see. First of all, with regard to her growing a garden, she actually in that treatment note was going in for treatment because she was injured. She was hoping to get treatment. And the note actually says she tends to grow a huge garden the size of Rhode Island, not that she was growing one. Then, with regard to giving somebody the benefit of the doubt, well, first of all, Dr. Jensen did state that he he's a rheumatologist. He opined that her symptoms were likely related to fibromyalgia and Social Security works on that. Is that a true diagnosis? I mean, it seems to hedge by saying probably or likely. More likely than not is sufficient for Social Security purposes. Social Security uses a preponderance of the evidence standard. But setting that aside, the ALJ found she has fibromyalgia. And so it's that's a moot point. At this point, there is a finding in the record that's under review now that she has fibromyalgia. Now, saying that the ALJ gave her the benefit of the doubt by saying she has fibromyalgia, well, he was actually giving you the benefit of the doubt in that respect. He's then got to also consider and take into account in his residual functional capacity assessment the limitations caused by that impairment just to say she has it, but then to disregard her description of the problems she was having as a result of it. But counsel, counsel, that that's true in any situation in which there's a discounting of the extent of symptoms, because in order to even get there, the ALJ has to find that the pain could be caused by the condition. And not everyone suffers the same amount of limitation from a particular condition, including fibromyalgia. So to say that because she, the ALJ found that this is what she had doesn't necessarily mean that the ALJ has to believe every limitation to which she testifies. Correct? It does not. But to say that she's the judge, the ALJ is giving her the benefit of the doubt while he then disregards or rejects her description of the limitations she was having, that's not, to call that the benefit of the doubt isn't saying much there. Her limitations, when she described her limitations on sitting, I mean, that's the big issue here is how limited she is even in being able to sit. And her testimony, her detailed testimony about how dysfunctional she is in her day-to-day life, that's what is the only way you can really understand with something like fibromyalgia or a chronic pain syndrome, which Dr. Thompson admitted she agreed she had, is by listening to her describe her description of the pain. The ALJ did not state any convincing reasons to reject her description of her pain symptoms. Thank you, counsel. We appreciate very much the helpful arguments from both of you and the case just argued is submitted.
judges: Graber, W. Fletcher, Freudenthal